[886 NYS2d 166]

In the Matter of JONATHAN MASON-KINSEY (Admitted as JONATHAN G. MASON-KINSEY), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND, ELEVENTH AND THIRTEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, September 15, 2009

**APPEARANCES OF COUNSEL**

*Diana Maxfield Kearse*, Brooklyn (*Diana J. Szochet* of counsel), for petitioner.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition dated March 11, 2008 containing 10 charges of professional misconduct. After a prehearing conference on July 28, 2008 and a hearing on September 10, 2008, the Special Referee sustained all charges with the exception of charge five. The Grievance Committee now moves to confirm the Supreme Court's report to the extent that it sustained charges 1 through 4 and 6 through 10 and to disaffirm the report to the extent that it failed to sustain charge five. The respondent has neither cross-moved nor submitted any papers in response to the Grievance Committee's motion.

Charge one alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

Between approximately January 1, 2004 and December 31, 2005, the respondent and his partner maintained three IOLA accounts at Carver Federal Savings Bank, entitled Scott Mason-Kinsey LLP IOLA, Scott Mason-Kinsey & Hart LLP IOLA, and/or Scott Mason-Kinsey & Hart IOLA II. Funds entrusted to the respondent and his partner in a fiduciary capacity, incident to their practice of law, were deposited in those accounts. The respondent engaged in a pattern and practice of drawing IOLA checks to which he signed the name of his partner, Armani B. Scott, Esq., without Mr. Scott's knowledge or consent.

Charge two alleges that the respondent engaged in a pattern and practice of drawing IOLA checks against insufficient funds,

in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Between approximately January 1, 2004 and December 31, 2005, the respondent and his partners maintained three IOLA accounts at Carver Federal Savings Bank into which funds entrusted to them ·in·a fiduciary capacity, incident to their practice of law, were deposited.

On the following dates, checks in the stated amounts drawn on those accounts were dishonored due to insufficient funds:

1. June 15, 2004      $ 92,382.71;
2. November 23, 2004      $ 1,000.00;
3. January 18, 2005      $ 53,000.00; and
4. August 26, 2005      $ 412,297.02

Charge three alleges that the respondent converted funds entrusted to him as·a fiduciary incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or·about March 9, 2005, the respondent drew a $50,000 check on one of the firm's three IOLA accounts payable to the order of Gregory J. Fierce. The corresponding deposit was not made until March 11, 2005. In the interim, the $50,000 check drawn by the respondent cleared against other clients' funds on deposit in that account.

Charge four alleges that the respondent converted funds entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or about March 21, 2005, the respondent drew a $24,980 check on one of the firm's IOLA accounts payable to the order of Montgomery Capital Corp. The corresponding deposit was not made until March 28, 2005. In the interim, the $24,980 check drawn by the respondent cleared against other clients' funds on deposit in that account.

Charge five alleges that the respondent converted funds entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about May 2005, the respondent represented BNC Mortgage, Inc. as lender, in connection with the sale of 168 Monroe Street in Brooklyn. On or about May 24, 2005, the respondent drew an IOLA check in the amount of $157,901 to the order of Fein, Such & Crane LLP to satisfy a mortgage held by Option One Mortgage Corporation and/or Wells Fargo Home Mortgage, Inc. relative to that property. At the time, the balance in the account was more than $157,901. The subject check was never negotiated.

Between May 24, 2005 and December 31, 2005, the respondent was required to maintain at least $157,901 on deposit in the subject IOLA account on behalf of Option One Mortgage Corporation and/or Wells Fargo Home Mortgage, Inc. During that interval, the account balance was depleted below the amount the respondent was required to maintain, and reached a low of $156,411 on September 26, 2005.

Charge six alleges that the respondent drew IOLA checks to cash, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On May 27, 2005, the respondent drew three checks to cash against one of the firm's IOLA accounts, for a total of $578,649. These were:

1. check No. 332 for $185,249;
2. check No. 333 for $200,040; and
3. check No. 334 for $193,360.

Charge seven alleges that the respondent failed to produce financial records he was required to maintain, which were requested by the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and (7) (22 NYCRR 1200.3 [a] [5], [7]) and DR 9-102 (d) (22 NYCRR 1200.46 [d]).

By letter dated April 18, 2006, the Grievance Committee requested the respondent's complete financial records, including, but not limited to, bank statements, deposit tickets, and cancelled checks for escrow accounts maintained between June 2002 and April 2006, as well as a ledger book or similar record of deposits into and withdrawals from said escrow accounts. The respondent failed to comply.

By letter dated May 22, 2006, the Grievance Committee again requested that the respondent produce those records. The respondent failed to comply. On June 27, 2006, the Grievance Committee staff telephoned the respondent to request those

records. Although the respondent agreed to produce the records that day, he failed to do so.

By letter dated June 28, 2006, the Grievance Committee directed the respondent to produce the foregoing records by July 7, 2006. The respondent produced some, but not all, of the requested records.

By letter dated July 14, 2006, the Grievance Committee requested specific records for specified times with respect to two of the firm's IOLA accounts. The respondent failed to produce those records. By letter dated August 14, 2006, the Grievance Committee directed the respondent to produce those records within five days. The respondent produced some, but not all, of the requested records.

By letter dated September 21, 2006, the Grievance Committee directed the respondent to produce bank statements, deposit tickets, and cancelled checks from one of the IOLA accounts for the period November 2004 through September 2006, and the ledger book or similar record of deposits into and withdrawals from that IOLA account for the period November 2004 through September 2006. The respondent failed to comply.

Charge eight alleges that the respondent failed to maintain required bookkeeping records for his IOLA accounts, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent failed to maintain a contemporaneous ledger or similar record of deposits into and withdrawals from his IOLA accounts.

Charge nine alleges that the respondent failed to cooperate with the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and (7) (22 NYCRR 1200.3 [a] [5], [7]).

Between approximately January 1, 2004 and December 31, 2005, the respondent represented individual purchasers and sellers, as well as banks, in connection with real property and or loan transactions. By letter dated March 9, 2007, the Grievance Committee requested information relative to five such transactions conducted by the respondent. The respondent failed to comply.

By letter dated April 16, 2007, the Grievance Committee once again requested the aforesaid information. The respondent again failed to comply.

By letter dated May 18, 2007, the Grievance Committee requested 12 original real property and/or loan transaction files. The respondent failed to comply.

By letter dated July 18, 2007, the Grievance Committee directed the respondent to produce 16 original real property and/or loan transaction files, including those previously requested by letter dated May 18, 2007. The respondent failed to comply.

By letter dated August 2, 2007, the Grievance Committee directed the respondent to produce 18 original real property and/or loan transaction files, including those previously requested by letters dated May 18, 2007 and July 18, 2007. The respondent failed to comply.

Charge 10 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

Between approximately January 1, 2004 and December 31, 2005, the respondent represented individual purchasers and sellers, as well as banks, in connection with real property and or loan transactions. In many of those transactions, the ostensible purchasers and/or borrowers did not intend to reside in the subject premises. They nevertheless executed fraudulent occupancy agreements in the respondent's presence, wherein they falsely asserted their intentions to reside in the subject premises. The respondent knowingly forwarded these fraudulent occupancy agreements to the respective lenders.

Based on the documentary evidence adduced, as well as the respondent's own admissions, we find that all 10 charges of the petition should have been sustained by the Special Referee. Hence, the Grievance Committee's motion to confirm the Special Referee's report to the extent that it sustained charges 1 through 4 and 6 through 10 and to disaffirm to the extent that it failed to sustain charge five is granted.

In determining an appropriate measure of discipline to impose, the Grievance Committee has informed the Court that the respondent has no prior disciplinary history. The respondent contends that the complaint brought against him by his former partner was motivated by revenge; however, there is no evidence offered on the record in support of that contention. Moreover, the contention is inconsistent with the respondent's admissions in the course of this proceeding, and from his

testimony at his examinations under oath and throughout the hearing.

While the respondent is guilty of technical conversions and bookkeeping lapses, it appears that no member of the public has suffered harm or complained. However, his drawing of IOLA account checks to cash and signing his former partner's name on IOLA checks without his consent evince a disregard of the disciplinary rules. In knowingly submitting false occupancy agreements to lenders, the respondent engaged in conduct involving fraud, dishonesty, deceit, or misrepresentation.

Balancing the nature of the respondent's misconduct with his previously unblemished record, his prompt remedial action and acceptance of responsibility for his failings, he is suspended from the practice of law for three years.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and SANTUCCI, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted, and all 10 charges of the petition are sustained; and it is further,

Ordered that the respondent, Jonathan Mason-Kinsey, admitted as Jonathan G. Mason-Kinsey, is suspended from the practice of law for a period of three years, commencing October 15, 2009 and continuing until further order of this Court, with leave to apply for reinstatement no sooner than six months prior to the expiration of the said period of three years, upon furnishing satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jonathan Mason-Kinsey, admitted as Jonathan G. Mason-Kinsey, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its

application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Jonathan Mason-Kinsey, admitted as Jonathan G. Mason-Kinsey, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).